UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| JANNA GARVIN and MICHAEL GARVIN,<br>    Plaintiffs,<br>v.<br>ETHICON, INC., et al.,<br>    Defendants. | Case No. 3:20-cv-00714-BJB-CHL |

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
COLLATERAL ESTOPPEL AND MOTION FOR JUDICIAL NOTICE

This Court should follow the recent holding in *Freeman v. Ethicon, et al.*, 2022 WL 3147194 (C.D. Cal., Aug. 4, 2022), and find that Defendants (hereinafter, collectively, "Ethicon") are collaterally estopped from challenging certain issues that are directly at issue in this case. The *Freeman* court held that Ethicon was collaterally estopped from contesting five (5) un-appealed factual findings made by the court in *People v. Johnson & Johnson et al*, 77 Cal.App. 5th 295, 292 Ca.Rptr.3d 424 (Cal. 2022) ("the State's Case"). Specifically, those five un-appealed issues are:

(1) Defendants' polypropylene mesh products (and specifically the TVT Obturator (hereinafter "TVT-O")) have the following dangerous properties: (a) chronic foreign body reaction, (b) shrinkage/contraction, (c) infection/biofilm, (d) inflammation, (e) not inert;

(2) The dangerous properties of Defendants' polypropylene mesh products (and specifically TVT-O) listed above cause and place patients implanted with mesh at risk of the following complications:
 (a) Lifelong/recurrent risk of vaginal exposures;
 (b) Lifelong/recurring risk of erosion into other organs;
 (c) Debilitating/life changing/chronic pain;
 (d) Shrinkage leading to pelvic pain and dyspareunia;
 (e) Pain to partner;
 (f) Distortion of vaginal cavity interfering with intercourse;
 (g) Need for mesh removal for serious complications, including chronic pain or dyspareunia, which may be difficult;
 (h) Multiple revision surgeries may be necessary to treat adverse reactions, and significant dissection may be required;

1

      (i) Even after additional surgeries are performed, adverse reactions may not resolve;
      (j) Neuromuscular problems, including acute and/or chronic pain in the groin, thigh, leg, pelvic, and/or abdominal area;
      (k) Risks to young, sexually active women;
      (l) Incapacitating pelvic pain;
      (m) Large scale erosion that are difficult to treat;

(3) The complications listed above are caused by the polypropylene mesh products themselves (and specifically TVT-O) separate and apart from the implantation procedure;

(4) Defendants' polypropylene mesh in its products (and specifically the polypropylene mesh in the TVT-O) degrades and Defendants were aware it degrades by 1992.; and

(5) Defendants knew about the dangerous properties and complications of its polypropylene mesh products (including TVT-O) from the time the first polypropylene transvaginal mesh product was launched by Defendants in 1998 and knew that all of these risks were present in the TVT-O at the time it was launched.

*See* Appendix 1. As explained throughout, the State's Case should have the same preclusive effect here as in *Freeman*, *see Freeman*, 2022 WL 3147194, at *8, and Plaintiffs request partial summary judgment and judicial notice on the issues in question.

## BACKGROUND

In the State's Case, the California Attorney General brought suit against Ethicon to enforce violations of California's Unfair Competition Law and False Advertising Law in connection with Ethicon's transvaginal mesh products—including the very same device at issue here in the instant case, the TVT Obturator System device ("TVT-O"). After a nine-week bench trial, the trial court issued a lengthy opinion and final judgment, finding in favor of the plaintiffs and assessing $345,000,000.00 in penalties against Ethicon. On appeal, the California appellate court affirmed the judgment in all but one respect.[1] As in the instant case, the State's Case focused on Ethicon's deliberate efforts to conceal the risks of pelvic mesh.

---

[1] The Fourth District Court of Appeals of California found that substantial evidence did not support the trial court's factual finding that Ethicon's sales representatives' oral representations were likely to deceive doctors. *People v. Johnson & Johnson et al.*, 77 Cal.App. 5th 295 at 306.

2

Defendants have raised identical positions and defenses in this case. For example, Defendants contend here that their pelvic mesh does not degrade, and that it poses few additional risks compared to traditional pelvic organ prolapse procedures. During the trial of this case, Defendants intend to subject this Court and the jury to days of paid expert testimony in support of those defenses. But after weeks of the exact same kind of expert testimony, the court found these defense contentions to be false:

> For all these reasons, the Court credits the combined weight of the company's own internal studies, the company's own testimony, the weight of scientific literature, and Dr. Iakovlev's testimony over the lesser weight of Dr. MacLean's stand alone testimony and concludes that J&J's Prolene mesh degrades, in contradiction to IFU claims that it does not. The Court concludes that Defendants' false statements regarding degradation in the IFUs were likely to deceive and therefore violated the UCL and FAL.

\*\*\*

C. The Weight of the Evidence Demonstrates the Severe, Long-Term Risks of Mesh

> J&J offered the expert testimony of Dr. Peter Rosenblatt, Dr. Charles Nager, and Dr. Karyn Eilber for the proposition that mesh does not cause or pose additional dangers aside from vaginal exposure and erosion. The Court concludes that the greater weight of the evidence, including company knowledge as the manufacturer of the device, internal company documents, company testimony, pathology findings on mesh-tissue reactions, and the clinical experiences and observations from mesh removal specialists, indicates otherwise.

\*\*\*

3. Defendants' IFUs Misled Regarding the Causation of Complications and the Dangerous Properties of Mesh

In addition to omitting risks and complications altogether and concealing and downplaying their potential severity and chronic/long-term nature, J&J also misleadingly attributed the complications they did disclose to pelvic surgery generally, rather than to the mesh itself. For example, J&J described "pain with intercourse" as a complication "typically associated with pelvic organ prolapse procedures" even though the company knew that the use of the POP mesh device carried with it a heightened risk of sexual dysfunction so great that it was a "main

concern for sexually active women" and that mesh use could result in distortion of the vaginal cavity, including vaginal tightening and/or shortening.

**Exhibit A1**, pp. 28, 38, 63 (internal citations omitted).

Critically, most of the factual determinations made by the trial court in the State's Case went unchallenged by Ethicon on appeal, and the **only** factual finding raised by Ethicon were summarized by the appellate court as follows:

> Ethicon claims substantial evidence did not support the trial court's finding that its IFUs were likely to deceive doctors. It attacks the court's finding in two ways - first, by claiming doctors do not read or rely on IFUs when counseling and treating patients; and second, by arguing that doctors' education, training, and experience precluded a finding that they were likely to be deceived by Ethicon's IFU's.

*People v. J& J et al*, 77 Cal.App. 5th at 329. A copy of the Court of Appeals opinion accompanies this motion as **Exhibit B1**. A copy of Defendants' appellate briefs accompanies this motion as **Exhibit B2** (opening brief) and **Exhibit B4** (reply brief).[2]

The un-appealed findings can be broadly categorized as (1) findings that dangers and risks exist within Defendants' pelvic mesh products (including the TVT-O) and (2) findings that Defendants were consciously aware of these dangers and risks during the period of time relevant to this case. Both categories of findings substantially support Plaintiffs' claims which Defendants intend to dispute during the trial of this case.

## ARGUMENT

*Summary Judgment Standard*

"In considering a motion for summary judgment, the question presented to this Court is whether there is 'no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c). This Court cannot try issues of fact on a

---

[2] Defendants filed a petition for reconsideration in the Court of Appeals. That petition did not address the un-appealed findings at issue here and was denied on April 27, 2022, in any event.

Rule 56 motion but is authorized to determine whether there are issues to be tried. *In re Atlas Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

***Under the Full Faith and Credit Statute, Federal Courts Abide by States' Collateral Estoppel (Issue Preclusion) Law***

The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires federal courts give full faith and credit to judicial proceedings of any state court. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985); *reh'g denied* 471 U.S. 1062 (1985); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461 (1982). "The United States Supreme Court has interpreted this Statute as requiring federal courts to abide by the individual states' collateral estoppel law, also known as preclusion law, when determining the preclusive effect of judgments rendered with the various states." *Marrese*, 470 U.S. at 380; *In re Calvert*, 105 F.3d 315, 217 (6th Cir. 1997). There is a parallel system of state and federal courts in this county. *Id.* "Thus, §1738 reflects a concern of comity by **allowing the individual states to determine the preclusive scope of the judgements rendered within their boundaries and commanding the federal courts to abide by those determinations**." *Marrese*, 470 U.S. at 380, 385; *Kremer,* 456 U.S. at 481-482 (emphasis added). Accordingly, the district court "is required at the outset to consider the law of the state in which a judgment was rendered to determine the preclusive effect to be accorded that judgment." *In re Kennedy*, 243 B.R. 1, 7 (Bankr. W.D. Ky. 1997). If the state court would accord the judgment preclusive effect, *Marrese* instructs that the federal court give preclusive effect to the judgment. *In re Calvert*, 105 F.3d 315, 317 (6th Cir. 1997).

In *Kennedy*, judgment creditors brought adversary proceedings to except a defamation judgment from discharge based on the preclusive effect of prior state court judgment in Michigan.[3]

---

[3] The *Kennedy* court also considered collateral estoppel as to a Kentucky state court judgment and applied Kentucky collateral estoppel law when reviewing that specific judgment, and finding preclusion applied as well. *In re Kennedy*, 243 B.R. 1, 9 (Bankr. W.D. Ky. 1997).

The U.S. Bankruptcy Court for the Western District of Kentucky noted it was bound to consider Michigan's collateral estoppel law and "whether the required elements have been established by a prior judgment or order that would be given preclusive effect by the state in which it was rendered…Michigan." *Kennedy*, 243 B.R. at 7. The *Kennedy* court found the facts necessary to support the judgment creditor's claim were clearly established by the prior Michigan judgment. "Consequently, the Plaintiffs [were] entitled to a judgment as a matter of law." *Id.* at 11.

Thus, under the Full Faith & Credit Statute and *Marrese*, this Court is bound by the laws of California regarding collateral estoppel (also known as issue preclusion).

*California Issue Preclusion*

California permits application of issue preclusion to an existing judgment: (1) after final adjudication; (2) of an identical issue; (3) actually litigated in the former proceeding; (4) necessarily decided in the former proceeding; and (5) asserted against a party in the former proceeding or someone in privity with a party. *In re Tomkow*, 563 B.R. 716, 722-723 (9th Cir. 2017). Elements number 3 and 5 are met based just on the face of the Statement of Decision: the Defendants are the same and the Statement of Decision describes the extensive witness testimony and evidence put on by the parties on the issues. The remaining elements are discussed below.

I.  **The Court of Appeals Decision Closes the Appellate Process for the Un-appealed Adverse Findings in the Statement of Decision, Making Those Findings Final for Preclusion Purposes.**

The decision of the Court of Appeals marks the end of the road for the un-appealed findings.

    A.  **Under California Law, Issue Preclusion Applies to Those Findings in the State of Decision Which Defendants Can No Longer Appeal**

California follows section 13 of the Second Restatement of Judgments, which addresses the finality requirement as it pertains to issue preclusion. *Meridian Fin. Servs., Inc. v. Phan*, 67

6

Cal.App.5th 657, 688 (2021). Section 13 in turn teaches that the rules for finality differ for res judicata (claim preclusion) and collateral estoppel (issue preclusion):

> The rules of res judicata are applicable only when a final judgment is rendered. However, <u>for purposes of **issue preclusion** (as distinguished from merger and bar), **"final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect**</u>.

Restatement (Second) of Judgments § 13 (1982). Comment (g) to Section 13 details the factors for a court to consider when determining the issue of finality in the context of issue preclusion, explaining:

> Before [finding preclusion], the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, **<u>that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion</u>**. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision.

*Id.* Here, Defendants were fully heard in a nine-week trial on the merits, a reasoned opinion was issued, and the findings which Plaintiffs seek to apply here were subject to appeal, but Defendants chose not to appeal them.

Likewise, Comment (e) to Section 13 explains that "[a] judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest." *Id.* Thus, the Statement of Decision is now final for preclusion purposes as to the parts of judgment which Defendants chose not to appeal, even if Defendants decide to continue to challenge the appellate court's findings on the issues they did appeal. "To be 'final' for purposes of collateral estoppel the decision need only be immune, **as a practical matter**, to reversal or amendment." *People v. Santamaria*, 8 Cal.4th 903, 942 (Cal. 1994) (emphasis added).

7

In other words, the inquiry for this Court is not whether as a **matter of form** an appeal is still docketed or docketable but whether as a **matter of substance** the opportunity to contest the un-appealed issues has passed. It has.

B.  With the Conclusion of the Court of Appeals Process, Defendants' Window for Appealing the Unchallenged Findings Has Now Closed

Because Defendants did not challenge the factual determinations at issue here in the Court of Appeals, it is now too late for them to challenge them in any direct attack. Thus, the failure to challenge these issues in the Court of Appeals means that the appellate period has closed, and the unchallenged determinations are preclusive against Defendants.

When a party appeals part of a trial court's decision, the un-appealed factual findings in the decision remain binding against it. This intuitive principle was recently illustrated in *Rincon EV Realty LLC v. CP III Rincon Tower, Inc.* where the plaintiffs appealed a portion, but not all, of a bench trial judgment against them. 43 Cal.App.5th 988, 1003 (Cal. 2019). As the court there explained, "In their appeal from the judgment entered by Judge Miller, plaintiffs had the opportunity to challenge any and all of her factual and legal determinations." *Id.* But because the "plaintiffs did *not* challenge a number of the key findings," those remained effective and were used against them on remand. *Id.* (emphasis original).

And having failed to challenge most of Judge Sturgeon's findings in their appeal to the Court of Appeals, there is no subsequent stage of the appellate process where Defendants can now do so. Disputed factual issues cannot typically be raised in the California Supreme Court if those issues were not raised in the Court of Appeals. The California Supreme Court has repeatedly explained the narrow circumstances when it will depart from this policy:

> As a matter of policy, we generally will not consider on review any issue which could have been, but was not, timely raised in the Court of Appeals. …However, in a number of cases, this court has decided issues raised for the first time before

8

> us, <u>*where those issues were pure questions of law, not turning upon disputed facts*</u>, and were pertinent to a proper disposition of the cause or involved matters of particular public importance.

*People v. Randle*, 35 Cal.4th 987, 1001-1002 (Cal. 2005)(emphasis original, internal citation and quotation omitted, overruled on other grounds by *People v. Chun*, 45 Cal.4th 1172 (Cal. 2009)). *See also Cedars-Sinai Med. Ctr. V. Superior Court*, 18 Ca.4th 1, 6 (Cal. 1998)(issue considered where it was "an issue of law that does not turn on the facts of this case"); *Fisher v. City of Berkeley*, 37 Ca.3d 644, 654 (Cal. 1984)("parties may advance new theories on appeal when the issue posed is purely a question of law based on undisputed facts); *Ford v. Gouin*, 3 Cal.4th 339, fn. 2 (Cal. 1992)(new question considered because it "presents a pure question of law.").

The matters on which Plaintiffs seek to apply preclusion here were **all** hotly disputed questions of fact in the trial of the State's case. Indeed, the very reason Plaintiffs wish to use those findings here is to avoid the necessity and expense of reopening those complex factual inquiries. Those factual findings can no longer be disturbed. *Meridian Financial Services*, 67 Cal.App.5th at 689, quoting Rest. 2d Judgments, §12, Reporter's Note to com. g. ("Finality" in the context of issue preclusion "may mean a little more than that the litigation of a particular issue has reached such a state that a court sees no really good reason for permitting it to be litigated again."). There is no articulable possibility that any subsequent appellate proceedings will upset those findings and they are "sufficiently firm to be accorded conclusive effect." *Id.*

**II.    Identify of Issues and Necessity Are Also Satisfied by the Statement of Decision from the State's Case.**

The facts of this case also meet elements (4) and (5) of California's issue preclusion rules: (4) the issue was necessarily decided in the former proceeding; and (5) asserted against a party in the former proceedings or someone in privity with a party. *In re Tomkow*, 563 B.R. at 722-723.  In *Key v. Tyler*, 34 Cal.App.5th 505 (2019), the Court of Appeals was asked to determine which

9

factual findings from a 67-page statement of decision should be carried over to a subsequent litigation in a different court. The Court of Appeals extracted specific findings from the state of decision, *id.* at 536-638, and provided a practical illustration of the types of preclusive findings available under California law.

### A. Necessarily Decided

The California Supreme Court has explained that under California law the "necessarily decided prong…require[s] only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." *Samara v. Matar*, 5 Cal.5th 322, 327 (Cal. 2018) (internal citations and quotations omitted). The findings Plaintiffs seek to apply here were clearly central, materials, important and necessary. After all, the central question in the State's case was whether Defendants had improperly marketed the pelvic mesh products (including the TVT-O at issue here) by misrepresenting or failing to disclose the truth about their dangers (i.e., the risk of the same injuries the Plaintiff here sustained). For Judge Sturgeon to determine that the truth had been concealed, he had to first determine whether Defendants' products actually posed the risks the State claimed they did and whether Defendants knew of those risks. Correspondingly, Defendants would have defeated the State's case had they convinced Judge Sturgeon that their pelvic mesh products did not actually present the dangers the State alleged. In fact, Defendants' pretrial brief in the State's case – **Exhibit A6** to this Motion – announced their intention to take precisely that approach at trial. **Exhibit A6**, p. 27.

It's not surprising, therefore, that both Defendants and the State of California devoted significant time and expert witness resources to the threshold issue of whether Defendants' products posed certain risks. The Statement of Decision reflects the careful attention both parties paid to these issues. For example, Defendants put on three separate expert witnesses to support

their claim that "mesh does not cause or pose additional dangers aside from vaginal exposure and erosion." **Exhibit A1** at 28-30. The State correspondingly put on three of their own experts. *Id.* at 25-28. The statement of decision shows on its face that Judge Sturgeon considered and balanced the testimony of these experts, and as well as internal company documents and the testimony of Defendants' employees. It is clear that the factual findings Plaintiffs seek to carry over to this case were not superfluous or "entirely unnecessary" to Judge Sturgeon's ultimate ruling.

B.  **Identity of Issues**

Modern California issue preclusion law encompasses not only the final, legal elements of an earlier litigation but also the important **factual findings** so long as those findings were necessarily decided. "Factual findings can support a decision on the merits of a claim even if they do not themselves resolve an element of the claim." *Key v. Tyler*, 34 Cal.App.5th 505, 534-536 (2019); Restatement (Second) of Judgments. § 27 cmt. j (1982). As comment j to Section 27 of the Restatement explains:

> [E]ven if a fact is categorized as evidentiary, great effort may have been expended by both parties in seeking to persuade the adjudicator of its existence or nonexistence and it may well have been regarded as the key issue in the dispute. In these circumstances the determination of the issue should be conclusive whether or not other links in the chain had to be forged before the question of liability could be determined in the first or second action.

The Court of Appeals decision in *Key* illustrates the broad range of factual determinations to which the court found issue preclusion applied:

- "Tyler knew that Ms. Plott was dependent on her for important information related to the family nursing home."

- "Tyler actively participated in procuring the 2007 Amendment."

- "Tyler's personal financial difficulties gave her the motive to unduly influence Ms. Plott."

- "Tyler intentionally withheld relevant evidence."

11

*Key*, 34 Cal.App.5th at 536-538.  Application of preclusion is not limited to the ultimate elements of the claims in the State's case.

Further, a major social purpose served by preclusion would be undermined if this Court ignored the expensively determined truths in Judge Sturgeon's Statement of Decision.  The parties in the State's case correctly realized that questions about mesh dangers and company knowledge were an underlying factual fulcrum upon which the broader case turned.  At great time and expense, those proceedings answered complex scientific and factual questions which would be expensive to reopen, not only for the parties but also for the Western District of Kentucky justice system.

### III. All the Policies Relevant to Issue Preclusion Favor Its Application in This Case and to These Issues.

The questions at issue in this motion go to the very heart of the policies underlying preclusion, which are legitimacy of the courts and the social cost of unending litigation.  As to the first, the very purpose of courts is to decide things:

> "Finality…is the service rendered by the courts through the operation of the law of res judicata.  The finality in contemplation means not only the immediate finality that is imposed on the litigation itself.  It includes also imposition of finality on the dispute that gave rise to the litigation so far as it is within the means of legal process to do so.  <u>In a still broader sense, the law of res judicata cumulatively reinforces the authoritativeness of the law itself</u>."

Restatement (Second) of Judgments, Introduction, Relation Between Law of Res Judicata and Law of Procedure (emphasis added).

The Restatement explains that the purpose respecting the finality of adjudication in the context of preclusion is not because we should assume that the first court was infallible since courts, just like all systems of human inquiry, can err.  But society has courts precisely because, in order for society to function, there must be a mechanism for hard factual questions to be finally determined.  Were the door to disputation always to be left open, or were courts forever reopening

each other's decisions, the primary function of courts which is to settle such questions would be defeated. For this reason, different courts should not reexamine each other's holdings and answer inconsistently.

> **Indefinite continuation of a dispute is a social burden**. It consumes time and energy that may be put to other use, not only of the parties but of the community as a whole. It rewards the disputatious. It renders uncertain the working premises upon which the transactions of the day are to be conducted. **The law of res judicata reduces these burdens even if it does not eliminate them**, and is thus the quintessence of the law itself: A convention designed to compensate for man's incomplete knowledge and strong tendency to quarrel.

*Id. (*emphasis added).

For that reason, in California as elsewhere, preemption (once the initial elements are met) is defeated only in the presence of affirmative indicators that the previously decided question should be reopened. Those well-known considerations are set out in Sections 28 and 29 of the Restatement and they broadly relate to either (a) circumstances indicating a lack of reliability in the prior decision or (b) circumstances indicating a lack of efficiency from preclusion. Restatement (Second) of Judgments §§ 28-29 (1982).

As to reliability, Courts have looked to factors such as whether the first proceeding was abbreviated or lacked procedural protections available in the second forum (e.g. Section 28(1), (3) and (4); Section 29(2), (5), (8)). None of those apply here. The parties in the State's case were given **more time** (nine weeks) to contest the issues in the trial of the State's case than the parties will request to try this case. Likewise, no one would contend that Defendants lacked an adequate incentive to fully litigate a case brought against them by the California Attorney General for hundreds of millions of dollars in penalties. Plus, the State's actions in that case (**Exhibit A3**) discloses how thoroughly that case was actually litigated. Thus, any suggestion that the state court forum was not sufficient to do justice to Defendants is spurious.

Additionally, Plaintiffs are unaware of **even a single trial verdict** where the un-appealed facts in **Appendix 1** were determined in Defendants' favor. This is not to say Defendants have never won any trials involving mesh products (though Plaintiffs' survey indicates they have lost the substantial majority), but Plaintiffs have been unable to locate a trial where the findings covered by this motion were decided in Defendants' favor. Instead, the prior verdicts in Defendants' favor seem to have turned, for example, on case specific considerations such as whether that particular plaintiff's damages were caused by Defendants' product or conduct. As far as Plaintiffs can discern, the issues on which they seek preclusion here have never been decided in Defendants' favor.

As to efficiency, Courts have declined to apply preclusion where the previously decided matters were questions of law (e.g. Section 29(7)) or where the party seeking to benefit from preclusion might have joined the earlier action (Section 29(3)). Here, the issues on which Plaintiffs seek preclusion are pure questions of fact. Further, Plaintiffs could not have joined the State's action as Plaintiffs filed their case in 2013, years before the State brought its case and she would have been outside of her statute of limitations had she waited to join the State's case.

**IV.     The Central District of California Has Already Granted Issue Preclusion**

Now that the appellate court has ruled, this issue is finally ripe for adjudication. Less than two weeks ago, the Honorable Consuelo B. Marshall granted an almost identical motion for summary judgment as here, awarding partial summary judgment to the vaginal mesh plaintiffs in *Terry Freeman, et al., v. Ethicon, et al.*, Case No. 2:20-cv-10661, in the Central District of California. Judge Marshall found issue preclusion and granted summary judgment for the same five un-appealed factual determinations Plaintiffs present to the Court here. A copy of the Central District of California's opinion accompanies this motion as **Exhibit B5**.

14

**V.    The Court Should Judicially Notice the Statement of Decision and Related Portions of the Record.**

To facilitate their motion for summary judgment, Plaintiffs ask the Court to judicially notice the Statement of Decision and other relevant materials from the State's case.[4] "In determining whether issue preclusion exists, a court may take judicial notice of all relevant facts that are shown by the court's own records, as well as public records from other proceedings." *Galen Hosp. Alaska, Inc. v. Azar*, 474 F.Supp.3d 214, 227 (D.D.C. 2020).

Plaintiffs have attached as exhibits several records from the trial court and appellate proceedings in the State's case. These records establish that (1) the Statement of Decision represents the final determinations of fact by the trial court in the State's case and (2) that Defendants have exhausted their opportunity to appeal with respect to the fact determinations indicated in **Appendix 1**.

## CONCLUSION

For the reasons set forth above, Plaintiffs ask the Court to grant summary judgment and hold that the findings of fact identified in Appendix 1 are binding on Defendants here. In support of that motion, Plaintiffs ask the Court to judicially notice the Statement of Decision and related portions of the record from the State's case.

---

[4] A party seeking to use issue preclusion offensively (as opposed to as an affirmative defense) is not required to plead it so long as the opposing party is given adequate notice. *See In re Fitch*, 349 B.R. 133, 140 (Bankr. N.D. Tex. 2006); *U.S. v. United Air Lines, Inc.*, 216 F.Supp. 709, 718 (E.D. Wash. 1962). However, if the Court believes that the matter should be pled, Plaintiffs request leave to file a supplemental pleading.